**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | ) | |
|---|---|---|
| Plaintiff, | ) | No.  CR 16-1112-TUC-CKJ |
| vs. | ) | **ORDER** |
| Pedro Ojeda-Ramirez, | ) | |
| Defendant. | ) | |

Pending before the Court is the pro se Motion for Reduction of Sentence based on the U.S.S.G. Amendment to Section 4C1.1[,] the "Zero-Point" Criminal History Defendant Under 18 U.S.C. § 3582(c)(2) ("Motion") (Doc. 177) filed by Pedro Ojeda-Ramirez ("Ojeda-Ramirez").  The Federal Public Defender filed a Notice RE:  Pro Se Filing, stating it will not be filing a supplemental memorandum (Doc. 178).  The United States Probation Office has filed a Memorandum RE:  Retroactive Criminal History Amendment of Chapter Four Zero-Point Offenders - Ineligible (Doc. 179).

*Procedural Background*

On September 19, 2016, Ojeda-Ramirez entered a plea of guilty to Counts One and Two of an Information, charging Ojeda-Ramirez with Conspiracy to Possess with Intent to Distribute Marijuana, in violation of 21 U.S.C. §§ 846, 84l(a)(l), 841(b)(l)(B)(vii), and Possession of a Firearm During a Drug Trafficking Offense, in violation of 18 U.S.C. §§ 924(c)(l)(A), 924(c)(l)(A)(i), and 2, both felony offenses.  Ojeda-Ramirez agreed to submit

1    to forfeiture and to not submit a claim to the firearms and ammunition that were used in the

2    offense.

3            The plea agreement provided:

4            Factual Basis:

5            I agree . . . that if this matter were to proceed to trial, the government could prove
     the elements of the offenses beyond a reasonable doubt based on the following
6            facts:

7                    Beginning at a time unknown and continuing to on or about May 2, 2016,
             at or near Cyprus Mine, on the Tohono O'odham Nation, in the District of
8            Arizona, I, Pedro Ojeda-Ramirez, worked as a scout out in the desert. I was
             a scout with Ulises Alaim Saijas-Zamorano and Vidal QuinonesGonzalez.
9            As scouts, we assist groups of backpackers of marijuana navigate their way
             through the desert from Mexico to the drop off location in Arizona while
10           steering them away from law enforcement. We are also armed with
             firearms to guard the backpackers from robbers and law enforcement. On
11           May 2, 2016, we received a call for assistance from a leader/guide of a
             group of backpackers that a group which was ahead of his group of
12           backpackers was being robbed of their marijuana. I responded to the area
             where the leader/guide, Severo Nieblas-Diaz, reported the robbery. I came
13           armed with a firearm. I was accompanied by two other individual, Ulises
             Alaim Saijas-Zamorano and Vidal Quinones-Gonzales, who were also
14           armed with firearms. We climbed a mountain, found the two bajadores
             (robbers) who had robbed the marijuana and all three of us started shooting
15           towards the two individuals. One of the individuals was hit. We saw ten
             bundles of marijuana which were being guarded by the two robbers. I
16           submit that the ten bundles marijuana weighed approximately 223
             kilograms. I was to be paid between $1,000 to $2,000 to recover the stolen
17           marijuana bundles. The recovered bundles would then be delivered, as
             intended, for further distribution. The four firearms that were used to
18           recover the stolen marijuana included a Century Arms C306 Sportster .308
             caliber rifle, bearing serial number C308E02778, a collapsible stock Model
19           AT-47 AK-variant rifle, bearing serial number FS002341, a 9 mm pistol
             (which was not recovered), and a smaller black rifle (which was also not
20           recovered but both were reported to have been used).

21   Plea Agreement (Doc. 93, p. 9). Dated September 19, 2016, Ojeda-Ramirez signed the plea

22   agreement. The plea agreement also provided Ojeda-Ramirez agreed the possible penalties

23   for the offenses provided for a five year minimum and a forty year maximum prison term for

24   Count One and a five year minimum and a lifetime imprisonment term for Count Two, with

25   the sentences to run consecutively. Additionally, the plea agreement set forth the agreement

26   of the parties which was for a sentencing range of 120 months (10 years) to 144 months (12

27   years) of imprisonment.

28

Pursuant to the United States Sentencing Guidelines ("USSG"), Ojeda-Ramirez's total offense level was 21, with a criminal history score of zero, and a criminal history category of I.   Pre-Sentence Report ("PSR") (Doc. 157, p. 8).   This resulted in a guideline imprisonment range of 37 to 46 months.   However, because the statutorily authorized minimum sentences were greater than the calculated guideline range, the minimum guideline terms of imprisonment were 60 months. *Id*. at 10; *see* USSG §2K2.4(b) and App. Note 2(A). Further, consecutive sentences were required under USSG § 5G1.2(b).

This Court sentenced Ojeda-Ramirez of February 2, 2017.   During the sentencing proceeding, the Court  adopted the advisory guideline calculations, to which there were no objections. The Court sentenced Ojeda-Ramirez to 70 month terms of imprisonment for each count, with the terms to run consecutively.  The terms of imprisonment were to be followed by 48 months of supervised release.

Ojeda-Ramirez was released from custody on April 21, 2023.   Bureau of Prisons Inmate Locator, https://www.bop.gov/inmateloc/.   Ojeda-Ramirez's Motion states he was transferred to a Mexican Penal Institution to complete his sentence.   Motion (Doc. 177, p. 2).

*USSG Amendment 821*

A judgment of conviction that includes a sentence of imprisonment may not be modified by a district court except in limited circumstances.   18 U.S.C. § 3582(b).   This section establishes an exception to the general rule of finality. *Dillon v. United States*, 560 U.S. 817, 824 (2010).   The statute provides:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . , the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2).   Under this provision, the Court must undertake a two-step process to determine whether a final sentence should be modified based on a sentencing range that

1    has been lowered by the Sentencing Commission.

2           The Court must first determine if a retroactive amendment to the USSG lowered a

3    defendant's guideline range and whether a reduction is consistent with the applicable policy

4    statements.  *Dillon*, 560 U.S. at 826.  The Court must then consider the § 3553(a) factors to

5    determine if it will exercise its discretion to reduce that defendant's sentence.  However, 18

6    U.S.C. § 3582(c)(2) does not authorize a reduction in a defendant's term of imprisonment as

7    not consistent with the policy statement if an "amendment . . . does not have the effect of

8    lowering the defendant's applicable guideline range."  USSG 1B1.10(a)(2)(B); *see also*

9    USSG 1B1.10, Application Note 1.

10          Amendment 821 to the USSG took effect November 1, 2023, and applies

11   retroactively.  *See* Sentencing Guidelines for the United States Courts, 88 Fed. Reg. 60534

12   (Sept.   1,   2023);   Amendment   821,   United   States.   Sentencing   Commission,

13   https://www.ussc.gov/guidelines/amendment/821   (last   accessed   March   18,   2024).

14   Amendment 821 is bifurcated into Parts A and B.

15          Part A of Amendment 821 limits the criminal history impact of "status points" under

16   USSG.  § 4A1.1.   Specifically, with regard to such "status points," a defendant who

17   committed an offense "while under any criminal justice sentence, including probation, parole,

18   supervised release, imprisonment, work release, or escape status," previously received two

19   additional criminal history points.  Amendment 821 amends § 4A1.1 to eliminate such status

20   points for any defendant who otherwise has six or fewer criminal history points and apply

21   one point, instead of two, for defendants who otherwise present seven or more criminal

22   history points.  "Part B, Subpart 1 of the amendment provides a two-level reduction in the

23   offense level for certain zero-point offenders—that is, defendants with no criminal history

24   whose offenses meet the guideline's criteria."  *United States v. Mariscal-Sanabia*, No.

25   219CR00251GMNNJK6, 2024 WL 841094, at *3 (D. Nev. Feb. 27, 2024), *quoting United*

26   *States v. Diaz-Diaz*, No. CR19-0187-JCC, 2023 WL 9040636, at *1 (W.D. Wash. Dec. 29,

27   2023).

28

1    Ojeda-Ramirez seeks a sentence reduction pursuant to Part B of Amendment 821.

2  "Part B, Subpart 1 of the amendment provides a two-level reduction in the offense level for

3  certain zero-point offenders—that is, defendants with no criminal history whose offenses

4  meet   the   guideline's   criteria."   *United   States   v.   Mariscal-Sanabia*,   No.

5  219CR00251GMNNJK6, 2024 WL 841094, at *3 (D. Nev. Feb. 27, 2024), *quoting United*

6  *States v. Diaz-Diaz*, No. CR19-0187-JCC, 2023 WL 9040636, at *1 (W.D. Wash. Dec. 29,

7  2023).   However, to receive such an adjustment, a defendant must meet all of the following

8  criteria:

9        (1) the defendant did not receive any criminal history points from Chapter Four, Part
10       A;

11       (2) the defendant did not receive an adjustment under § 3A1.4 (Terrorism);

12       (3) *the defendant did not use violence or credible threats of violence in connection
         with the offense*;

13       (4) the offense did not result in death or serious bodily injury;

14       (5) the instant offense of conviction is not a sex offense;

15       (6) the defendant did not personally cause substantial financial hardship;

16       (7) *the defendant did not possess, receive, purchase, transport, transfer, sell, or
17       otherwise dispose of a firearm or other dangerous weapon (or induce another
         participant to do so) in connection with the offense*;

18       (8) the instant offense of conviction is not covered by § 2H1.1 (Offenses Involving
19       Individual Rights);

20       (9) the defendant did not receive an adjustment under § 3A1.1 (Hate Crime
         Motivation or Vulnerable Victim) or § 3A1.5 (Serious Human Rights Offense); and

21       (10) the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role)
22       and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C.
         848[.]

23  USSG § 4C1.1(a), *emphasis added*.

24       In this case, the factual basis establishes Ojeda-Ramirez used violence and possessed

25  a firearm in connection with Count I and a firearm is the subject of Count II.  Under the plain

26  language of USSG § 4C1.1(a), Ojeda-Ramirez does not meet the criteria and is not eligible

27  for relief.

28

1    Accordingly, IT IS ORDERED:

2    1.    The   pro se Motion for Reduction of Sentence based on the U.S.S.G.

3  Amendment to Section 4C1.1[,] the "Zero-Point" Criminal History Defendant Under 18

4  U.S.C. § 3582(c)(2) ("Motion") (Doc. 177) is DENIED.

5    2.    The Clerk of Court shall mail a copy of this Order to Ojeda-Ramirz at the

6  following address:

7        Pedro Ojeda-Ramirezz # 59923-408
         Calle 300 KM. 3.5 Predio
8        Jesus Maria entre Canal 25 y 27
         Ejido la Chuparrosa, C.P.  81162
9        Guasave, Sinaloa
         MEXICO
10
     DATED this 5th day of August, 2024.
11

12

13                              Cindy K. Jorgenson
                                United States District Judge
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 6 -